# VIOLET LINNEMAN, ALSO KNOWN AS MRS. FRED LINNE-MAN, v. ABBOTT M. SWARTZ.[1]

November 9, 1951.

No. 35,458.

*Stetson & Jacobson,* for appellant.

*S. Louis Shore,* for respondent.

[1]Reported in 50 N. W. (2d) 47.

KNUTSON, JUSTICE.

On and prior to February 27, 1946, defendant had been engaged in a film delivery service under the name of Theatre Service Company. The business, which consisted of a type of service between theaters and film exchanges, operated by delivering films to the theater, collecting the charges for the films, plus delivery charges, and remitting to the film exchange its contract price, less the service charges. The charges so deducted represented the service business margin of gross income. The film companies either charged for the film rental on open account or required delivery to be made on a C. O. D. basis, which the delivery service must then collect and remit to the film exchange.

Plaintiff's husband was engaged in a similar type of business at the same address as that used by Theatre Service Company. One Roy Mix was employed by Theatre Service Company and appears to have been in charge of its business. Talks between plaintiff's husband, Mix, and defendant culminated in the execution of a conditional sales contract, dated February 27, 1946, under which plaintiff and Roy Mix, as copartners, purchased from defendant all the property of Theatre Service Company. They took over the business on March 1, 1946. The contract contains these provisions:

"Whereas, Roy Mix, one of the parties of the second part, now is and for some time last past has been employed by said party of the first part [defendant] and has been actively in charge of the said business on behalf of the party of the first part and is, therefore, fully familiar with all of the details as well as the present status of the accounts payable, accounts receivable and generally, the present status of the said business, and is desirous of purchasing the same from the said Abbott M. Swartz and the said Abbott M. Swartz having agreed to sell the same upon the terms and agreements hereinafter set forth,

"Now, Therefore, in consideration of the sum of Five Hundred Dollars ($500.00) in hand paid by the parties of the second part to the said party of the first part, and the receipt of which is hereby

acknowledged, and in further consideration of the parties of the second part jointly and severally assuming and agreeing to pay all of the outstanding indebtedness of the business aforesaid, including any and all of the sums that are now due and remaining unpaid to the various persons, firms and corporations either for C. O. D. shipments heretofore hereafter made and to be included, as well as for any and all other outstanding indebtedness, whether the same be secured or not and/or whether any of the said obligations were incurred in the name of Theatre Service Company or by Abbott M. Swartz, individually, but in connection with the said business, the said party of the first part does hereby transfer, sell and assign unto the said parties of the second part all of his (first Party's) interest in and unto all of the assets and effects of said business, * * *."

Roy Mix sold his interest in the business to plaintiff on December 15, 1946, and she has been the sole owner since that time.

Defendant contends that there should be an affirmance, for the reason that there are no assignments of error, nor is there a proper settled case.

■ Ordinarily, where there are no assignments of error, there is nothing for us to review. White v. Mazal, 192 Minn. 522, 257 N. W. 281. But where respondent in his brief has answered the argument of appellant we may, in our discretion, consider the case on its merits insofar as it is covered by such arguments. Erickson v. Mathwig, 226 Minn. 55, 31 N. W. (2d) 918. We have accordingly considered the propositions raised by the arguments in the briefs.

■ Two orders settling the case appear in the record, bearing the same date. One appears to be based upon a stipulation of the parties. No such stipulation appears, and defendant contends that there was none. The other, however, appears to be based on a hearing in which both parties participated. Defendant does not deny taking part in such hearing. In the absence of any showing to the contrary, we shall assume that the case was properly settled after a hearing on a motion, and that the order appearing to have been based on a stipulation was entered by mistake.

110

■ It is the contention of plaintiff that defendant fraudulently represented to her, at and prior to the consummation of the sale, that the C. O. D. account between Theatre Service Company, the theaters with which it dealt, and the film exchanges for which it made deliveries was intact and that he had never drawn out any money from the business. Plaintiff further contends that during the month of April 1947 she discovered a ledger sheet showing a withdrawal of $1,750 by defendant on July 20, 1945, and that she thereafter caused an audit to be made of the C. O. D. account and found a shortage of $1,153.84. The audit covered the period from July 20, 1945, to March 1, 1946. From this she concluded that defendant's representations that he had never withdrawn any money from the business were false and fraudulent, and she sued to recover the amount of such shortage. The case was tried on the theory of fraud. When plaintiff rested, defendant's motion for dismissal was granted by the trial court on the ground that the evidence failed to establish any fraudulent representations or that plaintiff had relied thereon. From the judgment entered dismissing the cause of action, this appeal followed.

Plaintiff now contends that, even though the evidence fails to establish a cause of action based on fraud, there is an implied warranty under M. S. A. 512.13(3)[2] that the property sold was free from encumbrances and that a shortage in outstanding C. O. D. payments constituted such an encumbrance; consequently, that there was a breach of such implied warranty, for which she is entitled to recover. This might be so were it not for the express provisions of the contract between the parties, under which plaintiff undertook to—

[2]"In a contract to sell or a sale, unless a contrary intention appears, there is—

\* \* \* \* \*

"(3) An implied warranty that the goods shall be free at the time of the sale from any charge or encumbrance in favor of any third person, not declared or known to the buyer before or at the time when the contract or sale is made."

"pay all of the outstanding indebtedness of the business aforesaid, including any and all of the sums that are now due and remaining unpaid to the various persons, firms and corporations either for C. O. D. shipments heretofore hereafter made and to be included, as well as for any and all other outstanding indebtedness, whether the same be secured or not and/or whether any of the said obligations were incurred in the name of Theatre Service Company or by Abbott M. Swartz, individually, but in connection with the said business, * * *."

Plaintiff admits that neither she nor her husband, who operated the business after its purchase and conducted the negotiations preceding its purchase, ever examined the books of the company prior to or for some considerable time after its purchase. The ledger sheet on which the withdrawal appeared, which was later discovered, remained in the office from the time of the purchase until the discovery. The only evidence on which fraud can be predicated is the testimony of plaintiff's husband that defendant stated to him that "it [the business] was okay and that he had never withdrawn a nickel for themself." The evidence fails to show that at the time of the purchase there was any C. O. D. account; it fails to show whether Theatre Service Company had collected C. O. D.'s which had not been remitted at that time; and it does not show whether Theatre Service Company owed film exchanges anything at all at the time of the sale. Whether the $1,750 allegedly withdrawn from the account represented capital invested by defendant to purchase trucks and other equipment at the time he started the business, for which he later reimbursed himself by the withdrawal shown on the ledger, as claimed by him, is left entirely in the realm of speculation and conjecture. As a matter of fact, the $1,750 withdrawal was made on July 20, 1945, while the first deposit to the credit of the business appears to have been made on July 30, 1945. It seems clear that plaintiff and her husband relied on the knowledge of Roy Mix concerning the business rather than on any representation of defendant. Mix was not called as

a witness, and the only evidence concerning his knowledge of the financial condition of the business at the time of the sale is the testimony of plaintiff's husband. He testified:

"Q. Did Mr. Mix tell you what the financial condition of the company was?

"A. He said it was okay."

At the time of the sale Mix was a partner of plaintiff. His knowledge is attributable to the partnership under M. S. A. 323.11. Neither is there any explanation of the difference in amount between the alleged withdrawal of $1,750 and the shortage of $1,153.84 found by the auditor. On this state of the record, there was nothing the trial court could do but grant defendant's motion to dismiss. The evidence falls far short of that required to establish a cause of action based on fraudulent representation.

Affirmed.